[No. 1531-3.    Division Three.    December 16, 1976.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSEPH WILLIAM BROOKS, *Appellant*.

*Patrick Cockrill* and *Hovis, Cockrill & Roy,* for appellant (appointed counsel for appeal).

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Robert N. Hackett, Jr., Chief Deputy,* for respondent.

GREEN, J.—Defendant appeals from a conviction of first-degree murder.

Error is assigned to (1) the trial court's ruling that defendant was competent to stand trial; (2) alleged misconduct by the State interfering with defendant's assistance of counsel; (3) the qualifications of the ballistics expert; (4) the admission of the results of experiments conducted with the death weapon; (5) the admission of character evidence of the victim; and (6) the giving and refusal to give certain instructions. We affirm.

During the evening of February 4, 1975, Linda Madison, defendant's girl friend of several months, told defendant their relationship was terminated. Linda Madison was found dead in the bedroom of her home in the early morning hours of February 5. Defendant testified that after their conversation on the evening of February 4, he returned to the victim's home carrying a loaded .22 caliber rifle with a potato placed over the muzzle for a silencer. He woke her and told her he had come to shoot her and commit suicide. However, he testified that instead he left the gun at her bedside, departed, and returned later to find her dead. Taking the rifle, he ran home. His brother, father, and stepmother testified that he told them he shot Linda. He asked his father to shoot him. His father called the police, who arrested the defendant and recovered the .22 caliber rifle and a suicide note that stated he had killed Linda Madison.

The investigation revealed that death resulted from a gunshot wound in the right temple, and that potato substance was splattered on the wall above the victim, but no powder burns or potato substance were found in or around the wound. Wallace Sorum, a criminalist and ballistics expert, testified that the bullet causing death came from the rifle recovered from the defendant. He stated that experi-

ments conducted by firing the rifle with a potato placed over the muzzle revealed that potato particles were present in test paper when fired upon from a distance of 6 inches; but at a distance of 12 inches, no potato particles or powder burning appeared on the test paper. From this testimony, the jury could infer that the rifle muzzle was more than 12 inches from the victim when fired. The jury found defendant guilty of first-degree murder.

First, defendant contends that the court erred in finding him competent to stand trial because (1) the court failed to follow the statuory procedures of RCW 10.77.010(6), .050, .060 and .090(1);[1] and (2) the evidence is insufficient. We disagree.

During trial, when defendant refused to appear in

---

[1] RCW 10.77.010(6):

" 'Incompetency' means a person lacks the capacity to understand the nature of the proceedings against him or to assist in his own defense as a result of mental disease or defect."

RCW 10.77.050:

"No incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues."

RCW 10.77.060:

"(1) Whenever . . . there is reason to doubt his [defendant's] competency, the court on its own motion or on the motion of any party shall either appoint or request the secretary to designate at least two qualified experts or professional persons, one of whom shall be approved by the prosecuting attorney, to examine and report upon the mental condition of the defendant. . . .

"(2) The court may direct that a qualified expert or professional person retained by or appointed for the defendant be permitted to witness the examination authorized by subsection (1) of this section, and that he shall have access to all information obtained by the court appointed experts or professional persons. . . .

"(3) The report of the examination shall include the following:

"(a) A description of the nature of the examination;

"(b) A diagnosis of the mental condition of the defendant;

"(c) If the defendant suffers from a mental disease or defect, an opinion as to his competency;"

RCW 10.77.090(1):

"If at any time during the pendency of an action and prior to judgment, the court finds following a report as provided in RCW 10.77.060 . . . that the defendant is incompetent, the court shall order the proceedings against him be stayed . . . until he has regained the competency necessary to understand the proceedings against him and assist in his own defense, . . ."

court, defense counsel requested psychiatric examination on the question of his competency to stand trial. This request was granted. Defense counsel did not move that the court appoint two experts, as the statutory procedure provides, but rather presented two psychiatrists of his own selection. Defense counsel prefaced his presentation of their testimony with the statement:

> We are before the court this morning pursuant to the following statutes, RCW 10.77.010(6) . . . and . . . pursuant to some case law.

Defendant now argues that he was not given a competency hearing within the terms of that statute. We find no error. The defendant elected the procedure that he followed which constitutes a waiver of the specific statutory procedure. In this circumstance, he cannot complain of the alleged error on appeal. *See State v. Hultenschmidt*, 87 Wn.2d 212, 550 P.2d 1155 (1976); *State v. Whittier*, 13 Wn. App. 293, 535 P.2d 847 (1975). Notwithstanding, we find substantial compliance with the purpose and intent of the statute because defendant received a full competency hearing.

As regards defendant's contention that the evidence is insufficient to support the finding of competency, we disagree. Following the guidelines of RCW 10.77.060(3), the expert testimony described the nature of the examination, diagnosed the mental condition, and concluded with an opinion as to defendant's competency. Two psychiatrists testified: Dr. Montgomery, who examined defendant on several previous occasions, and Dr. Roth, who examined defendant once for approximately 1 hour. Dr. Montgomery opined that defendant's mental status was not the result of a mental disease or defect, and that he understood the nature of the charge against him and the possible penalty upon conviction. On the other hand, Dr. Roth concluded that defendant suffered from a neurotic trait of distrust characterized as a mental disease or defect which interfered with his ability to use his attorneys adequately. In his opinion, defendant did not have the capacity to understand

the nature of the proceedings against him because "he does not understand that he has a chance to win" and has lost trust in people. We find that the trial court's reliance upon Dr. Montgomery's testimony was justified and amply supports the trial court's determination of competency to stand trial.

■ Second, defendant contends that conduct by the State interfered with his ability to work with counsel and the trial court erred in denying his motion for mistrial. Prior to the competency hearing, defendant refused to attend trial, and the jailers used a small amount of Mace during a scuffle in his cell. He was then taken to court. Defense counsel claimed that since defendant believed he was responsible for the incident, it destroyed an effective working relationship. Further, defendant claims that a prosecutor overheard statements made during conferences with his attorney and the information was used by the expert ballistics witness. The trial court denied the motion for mistrial, finding that the action of the jailers was reasonable, and that there was no showing that the overheard conversation affected the expert's testimony. A mistrial should be declared only if some occurrence has interfered with the judgment of the jury or has so tainted the proceedings that defendant cannot receive a fair trial. *Coats v. Lee & Eastes, Inc.*, 51 Wn.2d 542, 320 P.2d 292 (1958); *State v. Coburne*, 10 Wn. App. 298, 518 P.2d 747 (1973). Review of the record reveals the alleged infractions occurred outside the presence of the jury, the defendant was competent to assist in his defense, counsel conducted a competent defense, and the defendant was given a fair and impartial trial. We find no error.

■ Third, defendant argues that Mr. Sorum was not qualified to testify as a ballistics expert. Whether one is qualified to testify as an expert witness is a matter within the trial court's discretion and will not be disturbed except for abuse. Moreover, where the admissibility of opinion evidence prefaced on the qualifications of the witness is fairly debatable, the trial court has wide discretion. *State v.*

*Cole,* 67 Wn.2d 522, 535, 408 P.2d 387 (1965); *State v. Moore,* 7 Wn. App. 1, 499 P.2d 16 (1972); *State v. Thomas,* 16 Wn. App. 1, 553 P.2d 1357 (1976). Here, the record reveals that although Mr. Sorum's primary field of expertise is serology and tool-marking comparisons, he received training in ballistics and did considerable research and study in that area. We find no abuse of discretion.

■ Fourth, defendant contends that Mr. Sorum's testimony of the results of experiments with the death weapon is inadmissible due to the lack of substantially similar conditions. We disagree. Scientific experiments should be based as nearly as possible upon conditions and circumstances substantially like those existing at the time of the alleged crime. *State v. Smith,* 74 Wn.2d 744, 767, 446 P.2d 571 (1968). Here, the only difference was the use of a paper target, rather than human skin, to observe powder tatooing and retention of potato particles at varying distances. Mr. Sorum testified that the paper targets used possess an ability to retain powder tatooing and potato particles in a manner very similar to human skin. The admissibility of scientific experiments and other demonstrative evidence rests in the sound discretion of the trial court. *State v. Smith, supra; State v. McMurray,* 47 Wn.2d 128, 136-38, 286 P.2d 684 (1955). We find no abuse of discretion.

■ Fifth, defendant asserts that admission of testimony to establish the character of the victim to rebut his claim that she committed suicide was error. It is argued that the evidence admitted was too broad and should have been restricted to evidence showing the victim's lack of suicidal predisposition. The admission of rebuttal testimony rests within the discretion of the trial court. *State v. Bergen,* 13 Wn. App. 974, 538 P.2d 533 (1975). Here, the rebuttal evidence characterized the victim as a commendable worker who was always happy. Evidence of the victim's general personality traits and her emotional and mental state is relevant to show that she was not manifesting depression consistent with suicide. This is proper rebuttal in light of the defendant's testimony. We find no abuse of discretion.

■ Sixth, it is contended the court erred in giving instruction No. 8 and refusing to give proposed instruction No. 20. He argues the instruction given failed to properly inform the jury that if they found that his initial intention to kill was abandoned and never re-formed, the premeditated design required to find him guilty of *first-degree* murder could not exist. On review, the court's instructions must be considered as a whole. *State v. Hughes*, 14 Wn. App. 186, 540 P.2d 439 (1975). Here, the instructions adequately informed the jury that premeditated intent to kill must exist *at the time of the actual killing* in order to find defendant guilty of first-degree murder. The instructions given allowed the defendant to argue his theory to the jury. We find no error.

Seventh, defendant claims the court erred in refusing to give proposed instruction No. 8,[2] and in giving instruction No. 15.[3] He argues that the instruction given inadequately defines "intent" and "design" to effect death. Instruction

---

[2]"A 'design to effect death' is a malicious intention to effect death.

"Malice, as used in these instructions, is not confined to ill-will or hatred, but means any depraved condition of mind from which flows a criminal act intentionally done without just cause, excuse or palliation, and which shows a total disregard of social duties and a heart wholly bent on evil.

"In case of the killing of a human being, committed with a definite intention to kill him, and without legal excuse, justification or palliation, the intention so to kill, followed by the act of killing, if without legal justification, excuse or palliation, is by implication of law malicious."

[3]"One of the essential elements of the alleged commission by the defendant of murder, either in the first or second degree, is the alleged fact that he intended to kill LINDA MADISON. The intention or purpose, if any, with which an act is done is a mental state or condition of the mind and need not necessarily be proved by direct testimony, but may be inferred by the jury from all facts and circumstances, provided such facts and circumstances shall convince you beyond a reasonable doubt of the existence of such intention or purpose.

"In this connection, I charge that every person is presumed to intend the natural and ordinary consequences of his voluntary act, and this presumption should prevail, unless the jury from a consideration of all of the circumstances of the particular case before them as disclosed by the evidence, should entertain a reasonable doubt as to whether or not such an intention did in fact exist."

No. 15 must read in light of instructions Nos. 4[4] and 16.[5] We find that the instructions as a whole sufficiently define "intent" and "design" to effect death.

■ Eighth, defendant contends it was error not to instruct on manslaughter as a lesser-included offense. It is well established that a manslaughter instruction should only be given where there is evidence upon which a jury could reach such a verdict. *State v. Moore*, 61 Wn.2d 165, 171-72, 377 P.2d 456 (1963). Defendant's theory was that Linda Madison committed suicide after he left the gun beside her bed. He argues that the jury could have found that he aided and abetted in her suicide, thus justifying a manslaughter instruction. We disagree. If he participated in a suicide, he would necessarily have possessed the same intent to cause death. An intentional killing is not manslaughter. *See* RCW 9.48.060 (repealed July 1, 1976). The instruction was properly refused.

Finally, defendant contends the trial court erred in giving special verdict instruction No. 22, inquiring whether he was armed with a deadly weapon or firearm, RCW 9.95.040 and 9.41.025. We find no error. *State v. Frazier*, 81 Wn.2d 628, 503 P.2d 1073 (1972); *State v. Boyer*, 4 Wn. App. 73, 480 P.2d 257 (1971); RCW 9.95.040, 9.41.025.

Affirmed.

McINTURFF, C.J., and MUNSON, J., concur.

Petition for rehearing denied January 10, 1977.

Review denied by Supreme Court May 25, 1977.

---

[4]"As you will note, the terms 'willfully' and 'feloniously' are used in the Information. Accordingly, I am instructing you on the meaning of these terms.

"'Willfully' means intentionally, designedly, or voluntarily, or as occurring with the concurrence of the will of the party acting, as distinguished from an act that occurs accidentally or without the concurrence of the will of the party acting.

"The word 'feloniously', as used in the Information, means that the act so described therein was without sanction of or contrary to law and one which amounted in law to a felony.

"The crime charged herein is a felony."

[5]"A design to effect death is an intention to effect death."