[No. 11948–6–I.   Division One.   September 12, 1983.]

THE STATE OF WASHINGTON, *Respondent*, v. JESSIE HAROLD HUNTER, *Appellant*.

*Jessie Harold Hunter,* pro se, and *Paris K. Kallas* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Joanne Maida, Deputy,* for respondent.

CALLOW, J.—Jessie Harold Hunter appeals a jury verdict finding him guilty of first degree burglary, second degree assault, and by special verdict finding him armed with a deadly weapon and a firearm. By a pro se brief and a personal restraint petition, Hunter alleges several violations of his constitutional rights.

The issues presented are:

1. Did the trial court err when it denied Hunter's request for transcripts from his first trial?

2. Did the trial court err when it ruled that Hunter could be impeached with evidence of his prior conviction for promoting prostitution?

3. Was Hunter deprived of his constitutional right to a fair trial by alleged prosecutorial misconduct?

4. Did the trial judge unconstitutionally comment on the evidence when he submitted two instructions to the jury which were accurate statements of the law?

5. Did Hunter's conviction for first degree burglary and second degree assault violate his right against double jeopardy?

6. Did the State violate Hunter's right to a speedy trial when it amended the information to charge him with second degree assault?

7. Did the trial court err when it ordered that Hunter be held without bail during his appeal to this court?

On September 14, 1981, Dwight Owens and Francine Bridges were in the apartment of Ms. Bridges. The defendant entered the apartment, got into a fight with Mr. Owens and shot him in the head. The defendant fled the scene. Owens survived.

On December 10, 1981, Jessie Harold Hunter was charged with first degree burglary pursuant to RCW 9A.52-.020. Hunter had originally been charged in district court with both first degree burglary and second degree assault; however, the district court required the State to elect one of the two charges. As a result, the State dropped the second degree assault charge. The required election between the two charges was not based on lack of probable cause but because of the district court's erroneous belief that a conviction for both first degree burglary and second degree assault would violate Hunter's right against double jeopardy.

The first trial, before the Honorable Gary M. Little, ended in a mistrial on March 16, 1982. The second trial was set for March 18, 1982. In the interval, Hunter requested transcripts from the first trial. Judges Elston, Shellan, and Scholfield determined that a transcript was not necessary to Hunter's defense since the first trial had ended only 2 days before, no new issues were presented, the same attorney would be representing Hunter that represented him in the first trial, and the court reporter from the first trial would be available for consultation and testimony, if necessary. In addition, the judges felt that Hunter's request for transcripts was an attempt to delay the trial. Hunter also requested a different public defender. However, the court denied his request since his request was not based on any alleged ineffective assistance of counsel.

On March 17, 1983, the State filed a second amended information charging Hunter with an additional count of second degree assault while armed with a deadly weapon and firearm. Because Hunter was planning to testify on his

own behalf, the State moved to allow impeachment evidence of Hunter's 1976 conviction for promoting prostitution. After hearing argument from both sides, the court ruled that Hunter's conviction was admissible as probative of his credibility. Hunter was found guilty on all counts.

The first issue is whether the trial court erred when it denied Hunter's request for transcripts from his first trial.

■ *Griffin v. Illinois,* 351 U.S. 12, 100 L. Ed. 891, 76 S. Ct. 585 (1956) held that "the State must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners." *Britt v. North Carolina,* 404 U.S. 226, 227, 30 L. Ed. 2d 400, 92 S. Ct. 431 (1971). In determining the necessity of an indigent's right to free transcripts, two factors are relevant:

> (1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript.

*Britt v. North Carolina, supra* at 227. *Britt* relied on the second factor in upholding the trial court's decision to deny the defendant's request for transcripts. In *Britt,* the two trials were only a month apart, were before the same judge, with the same counsel, and the same court reporter. *Britt* rejected the trial court's rationale that petitioner's memory and that of his counsel furnished an adequate substitute for transcripts. However, the fact that the court reporter was readily available to clear up any inconsistencies in testimony between the first and second trial was held to be an adequate, albeit informal, alternative to transcripts.

Here, there were adequate alternatives to a transcript from the first trial: the second trial was 2 days after the first trial; the same attorney represented Hunter in both trials and was thus prepared for the second trial; and the court reporter was available for consultation in the event testimony in the first trial was needed to impeach testimony in the second trial. In *State v. Williams,* 84 Wn.2d 853, 529 P.2d 1088 (1975), the defendant's first trial ended

in a hung jury in October 1971. He was tried the second time in February 1982, approximately 4 months later. The trial court, *at the second trial,* denied defense counsel's motion to have the court reporters who had reported the first trial present during the second trial. Instead, the trial court placed the burden on defense counsel to "make such arrangements with the court reporters as he could." Here, the trial court accommodated the defendant in every way possible short of delaying the trial and having a transcript typed at public expense. No reason was shown for either delay of the trial or expense to the public in order to secure to the defendant a fair trial. No showing was made of how the defendant was harmed by not having a transcript when the defendant had available to him substitute procedures to accomplish the same results that could have been accomplished with a typed transcript. Hunter could have requested the substitute procedure of conferring with the first trial's court reporter. He did not. A reading of the record discloses that Hunter was not prejudiced by the trial judges' denial of his request for transcripts since the transcripts were not necessary for an effective defense.

The second issue is whether the trial court erred when it ruled that Hunter could be impeached with evidence of his prior conviction for promoting prostitution.

*State v. Alexis,* 95 Wn.2d 15, 19, 621 P.2d 1269 (1980) stated that the major factor to consider in balancing the probative value of a prior conviction against its prejudicial effect is "a comparison of the importance that the jury hear the defendant's account of events with the importance that it know of his prior conviction." *Alexis* listed six other factors that may be considered during the weighing process:

(1) the length of the defendant's criminal record; (2) remoteness of the prior conviction; (3) nature of the prior crime; (4) the age and circumstances of the defendant; (5) centrality of the credibility issue; and (6) the impeachment value of the prior crime.

*State v. Alexis, supra* at 19. The decision to admit prior

convictions for impeachment purposes is within the discretion of the trial court and shall not be disturbed absent a clear showing of abuse. *State v. Thompson,* 95 Wn.2d 888, 893, 632 P.2d 50 (1981). It is not necessary that the trial judge state his reasons for ruling that a prior conviction is admissible so long as "the record reflects a complete and careful evaluation of all relevant factors." *State v. Anderson,* 31 Wn. App. 352, 354, 641 P.2d 728 (1982). Here, the trial court heard argument from both sides and Hunter's counsel discussed many of the factors listed in *Alexis.* The record reflects that the trial judge carefully considered all the relevant factors. We find no error.

The third issue is whether Hunter was deprived of his constitutional right to a fair trial by prosecutorial misconduct.

When reviewing alleged prosecutorial misconduct, "[t]he relevant inquiry is whether the remarks 'when viewed against the backdrop of all the evidence, so taint[ed] the entire proceedings that the accused did not have a fair trial?'" *State v. Cunningham,* 23 Wn. App. 826, 840, 598 P.2d 756 (1979) (quoting *State v. Kraus,* 21 Wn. App. 388, 391, 584 P.2d 946 (1978)). *See State v. Nettleton,* 65 Wn.2d 878, 880, 400 P.2d 301 (1965). "The decision to grant or deny a new trial based upon allegations of prosecutorial misconduct depends upon the facts of each case and rests within the sound discretion of the trial judge." *State v. Torres,* 16 Wn. App. 254, 264, 554 P.2d 1069 (1976).

Here, Hunter lists eight instances of prosecutorial misconduct. Of the eight instances, six were objected to at trial, of which four were promptly sustained and two were overruled. Defense counsel did not request an instruction to disregard any of the statements by the prosecutor.

The prosecutor's question to Hunter as to whether he sold "dope" was not improper since testimony concerning his drug sales transactions was admitted without objection at trial. *See State v. Hale,* 26 Wn. App. 211, 611 P.2d 1370 (1980). Further, the jury was instructed to

disregard any remark, statement or argument by either counsel which was not supported by the evidence or the law as stated by the court. With reference to the prosecutor's use of the word "pimp," the jury was also properly instructed that Hunter's prior conviction for promoting prostitution could only be considered in connection with the weight or credibility of his testimony. While the prosecutor's argument might have been phrased by not using the word "pimp," counsel is allowed "to draw and express reasonable inferences from the evidence produced at trial.'" *State v. Hale, supra* at 216 (quoting *State v. Adams,* 76 Wn.2d 650, 660, 458 P.2d 558 (1969), *rev'd,* 403 U.S. 947 (1971)).

Hunter maintains the State's questioning implied he spent time in prison for his prior conviction when, as he claims, he did not. Upon objection to the State's questioning, the prosecutor indicated she had information that Hunter had spent time in prison. The information, however, was not introduced into evidence and the objection to the State's questioning was sustained.

For the first time on appeal, Hunter objects to the prosecutor's questioning about certain receipts which Hunter alleged were in his possession. Hunter alleges violation of his constitutional right against self–incrimination. His failure to object to the prosecutor's line of questioning does not preclude this court from considering the issue since the issue involves a possible violation of Hunter's constitutional rights.

Generally, it is improper for a prosecutor to ask the defendant to produce documents which are incriminating. However, the accused may waive his objection to such error by producing the document in question. *State v. Haye,* 72 Wn.2d 461, 472, 433 P.2d 884 (1967). While Hunter never produced the documents in question, the record discloses that he was willing to do so. Further, the prosecutor did not ask Hunter to produce self–incriminating documents, but that he produce documents to support his version of the story.

Prosecutorial misconduct requires reversal only if there is a substantial likelihood that the misconduct affected the verdict and thus deprived the defendant of his right to a fair and impartial trial. Similarly, a mistrial should be declared only if some occurrence has interfered with the judgment of the jury or has so tainted the proceedings that the defendant cannot receive a fair trial.

(Citations omitted.) *State v. Wilson,* 20 Wn. App. 592, 595, 581 P.2d 592 (1978). *See State v. Music,* 79 Wn.2d 699, 715, 489 P.2d 159 (1971), *vacated in part,* 408 U.S. 940, 33 L. Ed. 2d 764, 92 S. Ct. 2877 (1972); *State v. Brooks,* 16 Wn. App. 535, 539, 557 P.2d 362 (1976). Viewing the alleged prosecutorial misconduct in the context of the entire trial, we find no prejudicial error. The requests for a mistrial were denied properly.

The fourth issue is whether the trial judge unconstitutionally commented on the evidence when he submitted two instructions to the jury which were accurate statements of the law.

■ "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." Const. art. 4, § 16. Thus, the judge may not convey to the jury his personal attitude toward the merits of the cause. *State v. Foster,* 91 Wn.2d 466, 481, 589 P.2d 789 (1979). The challenged instructions are as follows:

It is a crime to carry, exhibit, display or draw any firearm in a manner, under circumstances, and at a time and place that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons.

It is a crime to aim any firearm, whether loaded or not, at or towards any human being, or to willfully discharge any firearm in any place where any person might be endangered thereby.

An instruction which can be viewed as an accurate statement of the law is not an instruction which conveys the court's attitude toward the merits of the case. *State v. Foster, supra* at 482–83.

Both of these instructions are accurate statements of the

law. *See* RCW 9.41.270(1) and RCW 9.41.230. Accordingly, the instructions were not comments on the evidence, and proper.

The defendant submitted what appears to be a personal restraint petition on form 17 of the Rules of Appellate Procedure dated March 21, 1983. He also submitted an untimely pro se brief. Both documents raised substantially the same questions—many of which were addressed in appellant's brief. After reviewing both documents, we find that many of the assignments of error are without merit. We will address those which raise meritorious issues.

The fifth issue is whether Hunter's conviction for first degree burglary and second degree assault violated his right against double jeopardy.

RCW 9A.52.050 provides that

> Every person who, in the commission of a burglary shall commit any other crime, may be punished therefor as well as for the burglary, and may be prosecuted for each crime separately.

This statute is commonly known as the burglary antimerger statute. The existence of the burglary antimerger statute "is an express statement that the legislature intended to punish separately any other crime committed during the course of a burglary." *State v. Hoyt,* 29 Wn. App. 372, 378, 628 P.2d 515 (1981).

*Missouri v. Hunter,* ___ U.S. ___, 74 L. Ed. 2d 535, 103 S. Ct. 673, 679 (1983) recently stated:

> Where . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct . . . the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

Hunter's convictions for first degree burglary and second degree assault did not violate his constitutional right against double jeopardy.

The sixth issue is whether the State violated Hunter's right to a speedy trial when the information was amended

to charge him with second degree assault.

CrR 2.1(d) provides that

> The court may permit any information to be amended at any time before verdict or finding if substantial rights of the defendant are not prejudiced.

First, Hunter cannot claim surprise or prejudice. He was originally charged with both second degree assault and first degree burglary. However, the district court required the State to elect which charge to pursue apparently ignoring the burglary antimerger statute.

Second, CrR 4.3(a) permits joinder of charges when the offenses "are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan". The second degree assault charge and the first degree burglary charge were "based on the same conduct or on a series of acts connected together."

■ Third, when multiple offenses arise out of the same criminal episode or transaction, there can be only one triggering date for calculating the time for trial for all the offenses. *State v. Wilke*, 28 Wn. App. 590, 593, 624 P.2d 1176 (1981). *See State v. Erickson*, 22 Wn. App. 38, 587 P.2d 613 (1978); *ABA Standards Relating to Speedy Trial* (Approved Draft, 1968). Here, the speedy trial time frame for both charges is the same since the second degree assault charge "was intimately related or connected to the burglary". *State v. Wilke, supra* at 594. Because the first degree burglary charge was brought in a timely fashion, the second degree assault charge was also. The trial court did not err when it denied Hunter's motion to dismiss based on an alleged violation of the speedy trial rule.

The seventh issue is whether the trial court erred when it ordered that Hunter be held without bail during his appeal to this court.

■ The defendant cites RCW 10.73.040 which states in part that

> In all criminal actions, except capital cases in which the proof of guilt is clear or the presumption great, upon an appeal being taken from a judgment of conviction, the

court in which the judgment was rendered, or a judge thereof, must, by an order entered in the journal or filed with the clerk, fix and determine the amount of bail to be required of the appellant . . .

CrR 3.2(h) provides:

A defendant (1) who is charged with a capital offense, or (2) who has entered a plea of guilty to a felony, or has been found guilty of a felony and is either awaiting sentence or has filed an appeal, shall be released pursuant to this rule, unless the court finds that the defendant may flee the state or pose a substantial danger to another or to the community. If such a risk of flight or danger exists, the defendant may be ordered detained.

The provisions of CrR 3.2(h) conflict in part with RCW 10.73.040. *State v. Smith,* 84 Wn.2d 498, 501, 527 P.2d 674 (1974) stated that the fixing of bail and release from custody of a convicted criminal has traditionally been, and still is, the function of the judicial branch of government, "unless otherwise directed and mandated by unequivocal constitutional provisions to the contrary." Because the inherent power to fix bail relates to the manner of ensuring that the alleged offense will be heard by the court, *Smith* held that the right to bail was essentially procedural in nature. Additionally, because the promulgation of rules of procedure is an inherent attribute of the Washington Supreme Court, the rules cannot be abridged or modified by the Legislature. *State v. Smith, supra* at 502. Accordingly, *Smith* held that the right to bail after verdict and pending appeal is governed solely by CrR 3.2(h) and that the trial court has the discretion to grant or revoke bail pending appeal.

In reviewing the record before this court, there does not seem to have been any weighing by the trial judge that Hunter might flee the area or pose a danger to the community. However, the judge's statements at the time of the denial of bail are absent from the record before us. Thus, we are precluded from considering any alleged abuse of discretion. *State v. Beckstrom,* 17 Wn. App. 372, 376, 563 P.2d 217 (1977).

The judgment and sentence is affirmed.

SWANSON and CORBETT, JJ., concur.

Review denied by Supreme Court December 2, 1983.