[No. 21019-3-II.   Division Two.   July 17, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. ISAAC DONALD SWEET, *Appellant*.

*Sheryl G. McCloud*, for appellant.

*John W. Ladenburg, Prosecuting Attorney*, and *Kathleen Proctor, Deputy*, for respondent.

HOUGHTON, C.J. — Isaac Donald Sweet appeals from his conviction of first degree assault, first degree burglary, and conspiracy to commit first degree burglary, arguing that, inter alia, the trial court erred in failing to merge his convictions of first degree assault and first degree burglary. We affirm.

## FACTS

On August 30, 1995, at about 5 P.M., Pierce County Deputy Dennis Miller responded to a 911 telephone call for assistance. As Miller approached the residence identified in the call, he heard a woman's faint voice asking for help. Inside, he found Judith Schuh lying on her stomach on the floor. Her head was swollen and bruised and she was barely conscious. Miller noticed that the master bedroom had been ransacked.

The Schuh residence sits on nine acres of rural land. A neighbor to the north had seen a truck leave the Schuh residence at a high rate of speed at about 5 P.M. The neighbor described two males in the truck.

Schuh later testified that on August 30, she was home alone when a man, later identified as Robert Slayton, came to the door. Slayton had stopped by on August 29 to ask if his son could play on the property. Schuh did not recognize him, declined permission, and he left.

On August 30, he returned. He said he was warning

neighbors about a local robbery, items were stolen from his truck, and asked permission to use Schuh's bathroom. Schuh agreed and waited outside for him to return.

After Slayton returned, he talked about the robbery again. Schuh walked outside to the end of the house, hoping Slayton would follow and depart. She noticed an empty Dodge truck parked at the end of the house. When she turned toward the back door, the man followed her and started to squirm as if he needed to use the bathroom. Schuh advised him to do so. When it seemed a long wait, Schuh went inside and waited by the kitchen table. Her next memory was waking up in the hospital, four days later.

Schuh's husband arrived shortly after Deputy Miller and confirmed that a safe was missing from the bedroom. The safe weighed approximately 300 pounds and was disguised as a night stand. Three witnesses testified that they could not lift it alone. Also, there was no damage to the floor, suggesting that the safe had not been pushed or dragged across it.

In September 1995, a telephone company repairman happened upon a campsite containing evidence connected to the Schuh burglary. He found melted credit cards, a driver's license, articles of clothing, a safe, a truck canopy, and .22 caliber bullets. The items recovered at the campsite, along with some jewelry found by an officer, were identified as items stored inside the Schuhs' safe.

Ronald Schuh suspected his wife's nephew, Isaac Sweet, was involved in the incident and he disclosed his suspicion to a detective. Sweet had lived on the Schuh property for several years with his father and knew about the safe and its location. He also knew that the victim was home alone during the day.

On October 6, 1995, a police investigator contacted Sweet in Montana, where he was in custody on an unrelated charge. He admitted owning a 1977 Dodge truck, but claimed Slayton had borrowed it and had returned it without the canopy. Sweet also stated that Slayton recently had convinced him to paint the truck black. Sweet denied

any involvement in the crime. Schuh reviewed a photographic montage and identified Slayton as the man who came to her door twice.

During later interviews, Sweet admitted that, on August 30, he went to the Schuh residence with Slayton "to make peace" with his aunt. He told the police that he had discussed going to his aunt's house with Slayton a few days earlier. Slayton told Sweet to stay hidden in the back of the truck. Sweet also stated that he helped Slayton load the safe into the truck and that they went to the campsite together, where Slayton opened the safe. Throughout the interview, Sweet stated that he feared Slayton, and he would not do anything to harm his relatives.

A jury convicted Sweet of first degree assault, first degree burglary, and conspiracy to commit burglary. The trial court declined to merge the convictions for first degree assault and burglary, imposed an exceptional sentence upward, and ordered the three sentences to run consecutively. Sweet appeals.

## ANALYSIS

Sweet contends that the trial court erred in declining to merge his convictions of first degree assault and first degree burglary. First, he asserts that the federal and state double jeopardy clauses bar his conviction on both charges. Second, he asserts that this court should follow Division Three's holding that despite the antimerger statute, assault merges with first degree burglary.[1] He then argues that his assault conviction must be vacated.

### Double Jeopardy

■■ The guaranty against double jeopardy protects a defendant from receiving multiple punishments for the same offense. *Whalen v. United States*, 445 U.S. 684, 688, 100 S. Ct. 1432, 1436, 63 L. Ed. 2d 715 (1980); *State v.*

---

[1]*State v. Ortiz*, 77 Wn. App. 790, 794, 895 P.2d 845 (1995).

*Gocken*, 127 Wn.2d 95, 100, 896 P.2d 1267 (1995). Double jeopardy applies if the multiple punishments cannot survive the "same elements" test, commonly known as the *Blockburger* test,[2] which examines whether each offense contains an element not included in the other. *Gocken*, 127 Wn.2d at 101 (citing *United States v. Dixon*, 509 U.S. 688, 113 S. Ct. 2849, 2856, 125 L. Ed. 2d 556, 568 (1993)).

> In order to be the "same offense" for purposes of double jeopardy the offenses must be the same in law and in fact. If there is an element in each offense which is not included in the other, and proof of one offense would not necessarily also prove the other, the offenses are not constitutionally the same and the double jeopardy clause does not prevent convictions for both offenses.

*State v. Calle*, 125 Wn.2d 769, 777, 888 P.2d 155 (1995) (citing *State v. Vladovic*, 99 Wn.2d 413, 423, 662 P.2d 853 (1983)). Under the "same elements" analysis, there is no double jeopardy bar to convicting Sweet of first degree assault[3] and first degree burglary,[4] because in order to commit assault a defendant does not need to enter or remain in a building unlawfully.

---

[2]*Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

[3] **Assault in the first degree.** (1) A person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm:

(a) Assaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death; or

. . . .

(c) Assaults another and inflicts great bodily harm.

RCW 9A.36.011.

[4] **Burglary in the first degree.** (1) A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building and if, in entering or while in the building . . . the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person.

9A.52.020.

*Merger Doctrine*

Sweet cites the Division Three opinion, *State v. Ortiz*, 77 Wn. App. 790, 794, 895 P.2d 845 (1995) and urges us to adopt its reasoning rather than the conflicting reasoning in several Division One cases.[5]

In *Ortiz*, the defendant was charged with first degree burglary, or, in the alternative, with one count of second degree assault and one count of fourth degree assault. The jury convicted Ortiz of first degree burglary and second degree assault. The Court held that assault is an element of first degree burglary and the burglary antimerger statute[6] did not apply. *Id.* at 794 (citing *State v. Johnson*, 92 Wn.2d 671, 677, 600 P.2d 1249 (1979), *cert. denied*, 446 U.S. 948 (1980)).

■ Our analysis of the merger doctrine and the antimerger statute lead us to decline to follow the reasoning in *Ortiz*. The merger doctrine is a rule of statutory interpretation. *State v. Michielli*, 132 Wn.2d 229, 238, 937 P.2d 587 (1997). It applies:

> where the Legislature has clearly indicated that in order to prove a particular degree of crime the State must prove not only that the defendant committed that crime but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes. *State v. Vladovic*, 99 Wn.2d 413, 421, 662 P.2d 853 (1983).

*State v. Frohs*, 83 Wn. App. 803, 806, 924 P.2d 384 (1996).

■ When engaging in statutory interpretation, courts look to the intent of the Legislature. *Duke v. Boyd*, 133 Wn.2d 80, 87, 942 P.2d 351 (1997) (citing *Electric Lightwave, Inc. v. Utilities & Transp. Comm'n*, 123 Wn.2d 530,

---

[5]*State v. Frohs*, 83 Wn. App. 803, 924 P.2d 384 (1996); *State v. Davison*, 56 Wn. App. 554, 784 P.2d 1268, *review denied*, 114 Wn.2d 1017 (1990); *State v. Fryer*, 36 Wn. App. 312, 673 P.2d 881 (1983).

[6]**"Other crime in committing burglary punishable.** Every person who, in the commission of a burglary shall commit any other crime, may be punished therefor as well as for the burglary, and may be prosecuted for each crime separately." 9A.52.050.

536, 869 P.2d 1045 (1994)). "[L]egislative intent should be derived primarily from the statutory language." *Duke*, 133 Wn.2d at 87. The courts are required to apply the statute when the language is clear and unequivocal, although the result may seem unduly harsh. We do so because we assume that the Legislature "meant exactly what it said." *Id.* (citing *Geschwind v. Flanagan*, 121 Wn.2d 833, 841, 854 P.2d 1061 (1993), and *King County v. Taxpayers of King County*, 104 Wn.2d 1, 5, 700 P.2d 1143 (1985)).

The *Ortiz* court based its decision upon *Johnson's* reasoning that subsection (1) of 9A.52.020, burglary in the first degree, includes assault as an element, although subsection (1) of 9A.52.030, burglary in the second degree,[7] involves no other offenses. The court noted: " '[b]oth, however, have as an element the intent to commit another crime. It would appear, therefore, that RCW 9A.52.050 has reference to such other crimes, rather than to the assault which is an element of first-degree burglary.' " *State v. Ortiz*, 77 Wn. App. at 794 (quoting *State v. Johnson*, 92 Wn.2d at 677). Thus, the *Ortiz* court held that once the jury found the defendant guilty of all charges, the lesser offense of fourth degree assault becomes merged with the greater offense of burglary in the first degree, despite the language of the burglary antimerger statute.

In *State v. Fryer*, 36 Wn. App 312, 315-16, 673 P.2d 881 (1983), the defendant relied upon *Johnson* for the same argument advanced in *Ortiz*. In *Fryer*, the court held that *Johnson* did not establish new law because "[f]irst, *Johnson* cites no authority for its interpretation of the antimerger statute. Second, the language . . . is dicta. Third, in view of the following language in *State v. Bonds*, 98 Wn.2d 1, 653 P.2d 1024 (1982), it may not reflect the present view of the court." *Fryer*, 36 Wn. App. at 315-16. We agree. The *Ortiz* court relied upon *Johnson*, which the Supreme Court distinguished in *State v. Bonds*, 98 Wn.2d 1, 15, 653 P.2d 1024 (1982).

---

[7]"**Burglary in the second degree.** (1) A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a building . . . ."

In *Bonds*, the court noted that, in *Johnson*, the "crimes of kidnapping and assault, committed contemporaneously with the rape and for the sole purpose of effectuating sexual intercourse, became merged in the completed crime of first degree rape." *Bonds*, 98 Wn.2d at 15. The *Bonds* court held that when deciding the merger issue in *Johnson*, there had been "no direct expression of the Legislature's intent to guide" the Court. *Id.*

■■ But in *Bonds*, the court held that the Legislature expressed its intent directly in RCW 9A.52.050, the burglary antimerger statute. The *Bonds* court concluded: "[t]he Legislature has clearly spoken on the issue and therefore burglary does not merge with first degree rape." *Bonds*, 98 Wn.2d at 15-16. Thus, we agree that *Johnson* may not reflect the present view of the Supreme Court. We are further persuaded by the analysis in *Frohs, Davison,* and *Fryer* and the clear statutory language of RCW 9A.52.050, which permits the trial court to punish "any other crime" committed during the course of a burglary.

Therefore, we hold that the trial court did not err in declining to merge the two convictions and its decision is affirmed.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

MORGAN and ARMSTRONG, JJ., concur.

Review granted at 137 Wn.2d 1007 (1999).