980 P.2d 1223 (1999)
138 Wash.2d 466
STATE of Washington, Respondent,
v.
Isaac Donald SWEET, Petitioner.
State of Washington, Respondent,
v.
Robert James Slaton, Petitioner.
Nos. 67136-2, 67377-2.
Supreme Court of Washington, En Banc.
Argued June 8, 1999.
Decided July 15, 1999.
*1225 Clayton Dickinson, Fircrest, for Petitioners.
John Ladenburg, Pierce County Prosecutor, Barbara Corey-Boulet, Deputy, Tacoma, for Respondent.
*1224 SMITH, J.
Petitioners Isaac Donald Sweet and Robert James Slaton seek review of decisions of the Court of Appeals, Division II, which affirmed decisions of the Pierce County Superior Court denying merger of their convictions for first degree assault with their convictions for first-degree burglary. Petitioner Sweet also raises additional issues. We consolidated the cases and granted review in both. We affirm the decisions in both cases.

QUESTIONS PRESENTED
The primary question presented in these consolidated cases is whether the burglary "anti-merger" statute, RCW 9A.52.050, prevents merger of convictions for first-degree assault and first-degree burglary.
Secondary questions presented are: (1) whether the testimony of a detective concerning statements by a defendant violates the defendant's right to remain silent under the Fifth Amendment; and (2) whether egregious conduct of one co-defendant may be used to justify an aggravated exceptional sentence for the other co-defendant.

STATEMENT OF FACTS
On August 29, 1995 Petitioner Robert James Slaton appeared at the residence of Mrs. Judith Schuh to ask if his son could play on her rural nine-acre property located in Pierce County.[1] Mrs. Schuh did not recognize *1226 him and denied his request.[2] On August 30, 1995 Petitioner Slaton returned to warn Mrs. Schuh of robberies occurring in the area.[3] He said items had been stolen from the 1977 Dodge pickup truck he was driving.[4] Although Mrs. Schuh did not see anyone in the truck parked at the end of the driveway to her house,[5] her nephew, Petitioner Isaac Donald Sweet, was hidden in the back of the truck[6] which was owned by him.[7]
During his conversation with Mrs. Schuh, Petitioner Slaton asked to use her bathroom.[8] She granted his request and waited for him outside her home.[9] After using the bathroom Petitioner Slaton returned outside and continued his conversation with Mrs. Schuh.[10] During the conversation he indicated he had to use the bathroom again.[11] She suggested he do so.[12] She again waited for him outside her home.[13] After what seemed like a long time, she went inside her home and sat at the kitchen table to wait for Petitioner Slaton.[14] The next thing she remembers is waking up in the hospital four days later.[15] She suffered a severe beating that caused brain damage.[16] She is presently disabled and will likely never regain full physical functioning.[17] Mrs. Schuh was discovered at about 5 p.m. by Pierce County Deputy Dennis Miller who was responding to a 911 call for assistance.[18] The deputy noticed the master bedroom of the residence had been ransacked.[19] Among the missing items was a safe disguised as a nightstand and weighing about 300 pounds.[20] There was no damage to the floor to indicate the heavy safe had been pushed or dragged across it.[21] At trial witnesses testified they could not lift the safe because of its weight.[22]
Soon after the incident the pickup truck driven by Petitioner Slaton was seen by a witness leaving the Schuh's driveway with two persons in it.[23] The description of the truck given by the witness was consistent with the truck Mrs. Schuh saw in her driveway while she was talking with Petitioner Slaton.[24] The truck's appearance was later changed.[25]
The husband of Mrs. Schuh, Ronald Schuh, suspected her nephew Petitioner Sweet was involved in the incident because he knew the location of the safe, he having lived on the their property for several years,[26] and because he also knew Mrs. Schuh was at home alone during the day.[27] Mrs. Schuh selected Petitioner Slaton from a photographic lineup as the person who was in her presence moments before she was severely beaten in her home on August 30, 1995.[28]
In September 1995 a campsite was discovered near the Schuh residence with the discarded canopy of the truck and the Schuh's *1227 stolen safe.[29] In the campfire were partially burned personal identification cards and credit cards taken from the Schuh residence.[30]
On October 6, 1995 a police investigator contacted Petitioner Sweet in Montana where he was in custody on an unrelated charge.[31] At first he denied any involvement in the incident at the Schuh residence, claiming he had loaned his truck to Petitioner Slaton who returned it without its canopy.[32] He later changed his story and claimed his only participation in the incident was assisting Petitioner Slaton in lifting the safe onto the bed of the truck.[33] He claimed he was lying down in the pickup truck on August 30, 1995 upon order of Petitioner Slaton whom he obeyed out of fear.[34]
Petitioner Slaton was arrested by the Canon City Police Department in Canon City, Colorado on an outstanding arrest warrant issued by the Pierce County Superior Court relating to the August 30, 1995 incident which resulted in injury to Mrs. Schuh.[35] During his extradition return to Washington, Petitioner Slaton told Pierce County Sheriff's Deputy Donald Wagner his only involvement in the crime was assisting Petitioner Sweet and a third person "Jason" in lifting the safe onto the pickup truck and in opening the safe.[36] Petitioner Slaton later changed his story and claimed he helped only Petitioner Sweet load the safe onto the pickup truck.[37] Petitioner Slaton said it was not he, but Petitioner Sweet, who beat Mrs. Schuh.[38]
Based upon the August 30, 1995 incident Petitioner Robert James Slaton on January 9, 1996 was charged and Petitioner Isaac Donald Sweet on January 29, 1996 was charged by the Pierce County Prosecuting Attorney with assault in the first degree, RCW 9A.36.011 (1)(c); burglary in the first degree, RCW 9A.52.020 (1)(b); and criminal conspiracy to commit burglary in the first degree, RCW 9A.28.040 and RCW 9A.52.020 (1)(b).[39] In separate jury trials before different judges, Petitioner Slaton was convicted of all counts on April 3, 1996 and Petitioner Sweet was convicted of all counts on June 5, 1996.[40]
The Informations in the two cases in identical language in three counts read:

COUNT I
I, JOHN W. LADENBURG, Prosecuting Attorney for Pierce County, in the name and by the authority of the State of Washington, do accuse [name of defendant] of the crime of ASSAULT IN THE FIRST DEGREE, committed as follows:
That [name of defendant], or an accomplice, in Pierce County, Washington, on or about the 30th day of August, 1995, did unlawfully and feloniously with intent to inflict great bodily harm, assault Ms. Judith Schuh and inflict great bodily harm, contrary to RCW 9A.36.011(1)(c), and against the peace and dignity of the State of Washington.

COUNT II
And I, JOHN W. LADENBURG, Prosecuting Attorney aforesaid, do accuse [name of defendant] of the crime of BURGLARY IN THE FIRST DEGREE, a crime based on the same conduct or series of acts connected together, and/or so closely connected in respect to time, place and occasion that it would be difficult to separate proof of the others, committed as follows:

*1228 That [name of defendant], or an accomplice, in Pierce County, Washington, on or about the 30th day of August, 1995, did unlawfully and feloniously with intent to commit a crime against a person or property therein, enter or remain unlawfully in a building, located at 19214 Patterson Rd. E., and in entering or while in such building or in immediate flight therefrom, the defendant or another participant in the crime did assault Ms Judith Schuh, a person therein, contrary to RCW 9A.52.020(1)(b) as amended by Washington Session Laws, Chapter 129, and against the peace and dignity of the State of Washington.

COUNT III
And, I, JOHN W. LADENBURG, Prosecuting Attorney aforesaid, do accuse [name of defendant] of the crime of CRIMINAL CONSPIRACY TO COMMIT BURGLARY IN THE FIRST DEGREE, a crime based on the same conduct or series of acts connected together, and/or so closely connected in respect to time, place and occasion that it would be difficult to separate proof of one charge from proof of the others, committed as follows:
That [name of defendant], in Pierce County, Washington, on or about the 30th day of August, 1995, did unlawfully and feloniously agree with one or more persons, to-wit: [other named defendant], to engage in or cause the performance of conduct constituting the crime of BURGLARY IN THE FIRST DEGREE, with the intent that such conduct be performed, and one or more of the persons involved in the agreement took a substantial step in pursuance of the agreement, contrary to RCW 9A.28.040 and RCW 9A.52.020(1)(b), and against the peace and dignity of the State of Washington.
On May 22, 1996 Petitioner Slaton was sentenced by the Honorable Sergio Armijo to an aggravated exceptional sentence of 360 months on the first count, 116 months on the second count, and 87 months on the third count, the sentences to run concurrently.[41] On September 16, 1996 Petitioner Sweet was sentenced by the Honorable Frederick W. Fleming to an aggravated exceptional sentence of 342 months on the first count, 48 months on the second count, and 36 months on the third count, the sentences to run consecutively.[42] In both cases the courts declined to merge Petitioners' convictions for assault in the first degree and burglary in the first degree.[43]
Petitioner Sweet appealed his conviction, asserting among other things, that the trial court erred (1) because the federal and state double jeopardy clauses barred his conviction on first-degree assault and first-degree burglary;[44] (2) in admitting out-of-court statements of his co-defendant through inadmissible hearsay testimony of Deputy Wagner;[45] and (3) in imposing upon him an aggravated exceptional sentence.[46]
Petitioner Slaton appealed, asserting that "(1) first degree assault cannot be charged separately under the burglary anti-merger statute; ... (2) first degree assault, first degree burglary, and conspiracy to commit burglary constitute the same criminal conduct;... [and (3) ] the trial court denied him the right of allocution."[47]
The Court of Appeals (Chief Judge Elaine Houghton writing) in a partially published opinion affirmed Petitioner Sweet's conviction in its entirety.[48] The Court (Chief Judge Elaine Houghton writing) in an unpublished opinion affirmed Petitioner Slaton's *1229 conviction on the first two grounds, but not on the question of allocution, vacating his sentence and remanding for resentencing after concluding Petitioner Slaton had been denied his right to allocution.[49]
We granted review in both cases on February 2, 1999 and consolidated them because of the common issue of whether the convictions for first-degree assault should be merged with the convictions for first-degree burglary.

DISCUSSION
The first-degree assault statute, RCW 9A.36.011 (1)(c), reads:
(1) A person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm:
....
(c) Assaults another and inflicts great bodily harm.
The first-degree burglary statute, RCW 9A.52.020 (1)(b), reads:
(1) A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building and if, in entering or while in the building or in immediate flight therefrom, the actor or another participant in the crime ... (b) assaults any person.
The burglary "anti-merger" statute, RCW 9A.52.050, reads:
Every person who, in the commission of a burglary shall commit any other crime, may be punished therefor as well as for the burglary, and may be prosecuted for each crime separately.
In State v. Johnson[50] this Court concluded that convictions for first-degree kidnapping and first-degree assault merged into a conviction for first-degree rape. In reaching that conclusion the Court gratuitously discussed merger of convictions for assault and burglary in the first degree:
If this section [RCW 9A.52.050, the burglary "anti-merger" statute] is read with RCW 9A.52.020 and .030, defining burglary in the first and second degrees, it will be seen that, while subsection (1) of .020 includes assault as an element, subsection (1) of .030 involves no other offense. Both, however, have as an element the intent to commit another crime. It would appear, therefore, that RCW 9A.52.050 has reference to such other crimes, rather than to the assault which is an element of first-degree burglary.[[51]]
Although the Court of Appeals, Division III, following Johnson, has approved merger of assault with first-degree burglary upon convictions for both,[52] the Court of Appeals, Division I, has held to the contrary that those convictions may not merge.[53] Division I concluded the "existence of the burglary antimerger statute `is an express statement that the legislature intended to punish separately any other crime committed during the course of a burglary.'"[54] Its stated reasons for not following Johnson are that Johnson cited no authority for its interpretation of the "anti-merger" statute; and the later case of State v. Bonds[55] suggests Johnson may not have reflected the prevailing opinion of this Court.[56]
"Merger is a rule of statutory interpretation."[57] "[T]he fundamental object of statutory interpretation is to ascertain and *1230 give effect to the intent of the legislature"[58] which is done by "first look[ing] to the plain meaning of words used in a statute."[59] "When the words in a statute are clear and unequivocal, this court must apply the statute as written"[60] unless the statute evidences an intent to the contrary.[61]
"The [merger] doctrine arises only when a defendant has been found guilty of multiple charges, and the court then asks if the Legislature intended only one punishment for the multiple convictions."[62] It will "only appl[y] where the Legislature has clearly indicated" it intended the offenses to merge.[63]
The plain language of RCW 9A.52.050 expresses the intent of the Legislature that "any other crime" committed in the commission of a burglary would not merge with the offense of first-degree burglary when a defendant is convicted of both. In this instance the "other crime" is assault. The statute does not evidence a contrary intent.
It is correct to conclude that Johnson does not reflect the prevailing opinion of this Court concerning the burglary "anti-merger" statute. In Bonds we concluded that burglary does not merge with first degree rape,[64] and also concluded in State v. Collicott that a defendant could be charged separately with burglary in the first degree, rape in the first degree and kidnapping in the first degree and, upon conviction, punished for each charge.[65] Based upon our decisions in Bonds and Collicott, we conclude in this case that under the burglary "anti-merger" statute, RCW 9A.52.050, the offenses of first-degree assault and first-degree burglary may be separately charged and separately punished upon conviction for both.
Petitioner Sweet claims he was not in the Schuh residence and thus could not be held responsible for the burglary and assault. Even assuming the jury might have believed he did not enter the house, it is not necessary for him to have been in the Schuh residence on August 30, 1995 to be charged with and convicted of first-degree burglary and assault because he was charged as an accomplice and the trial court instructed the jury on accomplice liability.[66] The accomplice liability instruction allowed the jury to convict Petitioner Sweet as a principal even if he did not enter the Schuh residence on the day the burglary and assault were committed. It is sufficient for Petitioner to have done "something in association with the principal to accomplish the crime."[67] It is sufficient for an accomplice to have general knowledge of a crime.[68] It is not necessary for an accomplice to have specific knowledge of every element of the principal's crime.[69]
Petitioner Sweet participated with Petitioner Slaton in planning the burglary. He knew the location of the Schuhs' safe. Petitioner Slaton did not. Although Petitioner Sweet denies entering the Schuh residence, there is strong circumstantial evidence that he did enter and assisted Petitioner Slaton in removing the safe from the home, the safe weighing about 300 pounds, and the absence of damage to the floor of the Schuh residence *1231 indicating the safe had not been pushed or dragged across it.[70]
Additionally, the jury convicted Petitioner Sweet of conspiracy to commit the crime of burglary in the first degree. This to some extent is further indication the jury was convinced of his involvement in the burglary of the Schuh residence and the consequent assault upon Mrs. Schuh.

FIFTH AMENDMENT RIGHT TO REMAIN SILENT
Petitioner Sweet asserts that his Fifth Amendment right to remain silent was violated during the testimony of Pierce County Sheriff's Deputy Donald Wagner. Deputy Wagner testified "I asked him if he would want to take a polygraph examination when he returned to our jurisdiction, .... He indicated that he would be willing to do that when he got back"[71] and "I asked him if he would provide me with a written statement, and he said that he would do that after he had discussed the matter with his attorney."[72] Petitioner's defense counsel did not object to this testimony. Neither polygraph results nor a written statement was introduced at Petitioner Sweet's trial. The right to remain silent, or the privilege against self-incrimination, is based upon Amendment V of the United States Constitution which provides in pertinent part that "[n]o person ... shall be compelled in any criminal case to be a witness against himself...." "The purpose of the right is... `to spare the accused from having to reveal, directly or indirectly, his knowledge of facts relating him to the offense or from having to share his thoughts and beliefs with the Government.'"[73]
Petitioner Sweet compares Deputy Wagner's testimony to that of the officer in State v. Easter[74] in which this Court held that a defendant's right to remain silent was violated. In Easter the officer testified the defendant was a "smart drunk" because he was evasive, would not talk to or look at or get close enough to the officer for the officer to make a good observation about whether the defendant was intoxicated.[75] During closing argument the prosecutor referred to the defendant several times as a "smart drunk" and argued that two weeks of testimony were "best summed up with the words `smart drunk.'"[76] There are significant differences between this case and Easter. Deputy Wagner's testimony is at best "a mere reference to silence which is not a `comment' on the silence [and] is not reversible error absent a showing of prejudice."[77] Petitioner Sweet has not established he was prejudiced by Officer Wagner's testimony. Even assuming it might have been error to admit the testimony, any error was harmless.[78]

AGGRAVATED EXCEPTIONAL SENTENCE
Petitioner Sweet challenges his exceptional sentence of 342 months for his conviction of assault in the first degree.[79] He asserts that under the Sentencing Reform Act of 1981 and RCW 9A.08.020 (accomplice liability statute) an exceptional sentence for an accomplice cannot be based on the "`deliberate cruelty, multiple incidents, [and] ... severity of the injury' inflicted by the principal."[80] His sentence is twice the standard range *1232 sentence for a person with his offender score of 4.
The trial court based Petitioner's Sweet's exceptional sentence on the following aggravating factors:
(1) [T]he defendant's conduct during the commission of the offense manifested deliberate cruelty to the victim, and multiple incidents to the victim. That the victim, Judith Schuh, was struck from behind on the head causing her to fall to the ground. Once on the ground the victim was repeatedly struck over her entire face and body as evidenced by the severe bruising covering her face and body.
(2) The severity of the injury to the victim, Judith Schuh, is also an aggravating factor justifying grounds for an exceptional sentence. The harm inflicted upon victim Judith Schuh was far greater than necessary to establish the crimes....
(3) The defendant's conduct was far more egregious than typical in such a case, and is therefore an additional aggravating factor justifying an exceptional sentence. The harm inflicted upon the victim was far greater than necessary and covered her entire body....
(4) The defendant's knowledge that the victim, Judith Schuh, was particularly vulnerable.... [He] knew that the victim would be incapable of defending herself because of her age and stature. The victim, Mrs. Schuh, is a small woman of 5'2" tall. She was 52 years old when the crime was committed. The defendant knew that the victim would be home alone as her husband routinely left early each morning for work. The victim's home is isolated in a rural area of Orting, Washington. The victim's home is surrounded by approximately 9 acres of property. There were no neighbors on the victim's property, and no one to help victim Judith Schuh. The defendant is 5'8" tall and weighs 290 pounds. The defendant's accomplice is 6'5" tall and weighs approximately 240 pounds.
(5) The defendant's use of his position of trust and confidence to facilitate the commission of the offense.... The defendant is the nephew of the victims Ronald and Judith Schuh. The defendant lived on the Schuh property off and on during a five year period from approximately 1989 until 1993. During the time that the defendant lived on the Schuh property he was shown the safe that contained money, jewelry and other valuables concealed in the victim's bedroom. Only someone familiar with the safe would have known of its existence, and location concealed from view in a nightstand. The defendant also knew that his aunt, Judith Schuh, would be home alone during the day with his uncle, Ronald Schuh, at work. The defendant knew that Mrs. Schuh was a homemaker who did not work outside the home, and had not worked during the time period that the defendant lived on the Schuh property. The safe and its contents were the only items stolen in the burglary.[81]
A trial court may impose an exceptional sentence outside the standard range when there are "substantial and compelling" reasons.[82] On appeal the appellate court inquires whether those reasons justify the sentence. The inquiry uses the following questions and standards of review. "1. Are the reasons given supported by evidence in the record? As to this, the standard of review is `clearly erroneous'. 2. Do the reasons justify a departure from the standard range? The standard of review on this is as a `matter of law'. 3. Is the sentence clearly [too excessive or] too lenient? The standard of review on this last question is `abuse of discretion'."[83]
Under the facts in this case, the instructions to the jury, and the verdict of the jury, the trial court properly concluded that Petitioner Sweet engaged in manifest deliberate cruelty to the victim, Mrs. Judith Schuh; that Mrs. Schuh suffered severe injury; that Petitioner's conduct was more egregious than typical; that Petitioner knew Mrs. *1233 Schuh was particularly vulnerable; and Petitioner used his position of trust and confidence (as nephew of Mrs. Schuh) to facilitate commission of the crime. For these reasons the court concluded it was appropriate to go beyond the standard range sentence of 129 months to 171 months.[84] There was no abuse of discretion.
Petitioner Sweet did not challenge all the aggravating factors relied upon by the trial court in imposing the aggravated exceptional sentence. "An exceptional sentence may be upheld on appeal even where all but one of the trial court's reasons for the sentence have been overturned."[85] The trial court stated sufficient reasons to justify the aggravated exceptional sentence imposed upon Petitioner Sweet.
We therefore affirm the decisions of the Court of Appeals in the cases of both Petitioner Robert James Slaton and Petitioner Isaac Donald Sweet.

SUMMARY AND CONCLUSIONS
Petitioner Isaac Donald Sweet and Petitioner Robert James Slaton were convicted in separate jury trials on one count each of first-degree assault, first-degree burglary and criminal conspiracy to commit burglary in the first degree based upon the brutal beating of Mrs. Judith Schuh and the burglary of her residence. In their separate appeals Petitioners asserted that, despite the burglary "anti-merger" statute, RCW 9A.52.050, their assault convictions should merge with their burglary convictions. The cases were consolidated for a hearing before this Court.
Merger is a rule of statutory interpretation and applies only where the Legislature has clearly indicated that it should. A reading of RCW 9A.52.050 leads to the conclusion that the Legislature did not intend that burglary in the first degree based upon an assault would be merged with the separately charged offense of assault upon conviction for both crimes. This Court adopted such an interpretation of RCW 9A.52.050 in State v. Bonds and State v. Collicott. The trial courts and the Court of Appeals correctly determined that Petitioners Sweet and Slaton's convictions for assault in the first degree and burglary in the first degree should not be merged.
The Court of Appeals was correct in denying Petitioner Sweet's appeal on the other issues. It was appropriate for the trial court to give an instruction on accomplice liability. It established a constitutional permissive inference that allowed the jury to convict Petitioner Sweet as a principal if he did "something in association with the principal to accomplish the crime." This was established under the evidence in this case.
Petitioner's Fifth Amendment right to remain silent was not violated by the testimony of Deputy Donald Wagner. The testimony is at best a mere reference to silence which is not a "comment" on the silence and is not reversible error absent a showing of prejudice. Petitioner has not demonstrated that he was prejudiced by the testimony. Even assuming it might have been error to admit the testimony of Deputy Wagner, the error was harmless.
The trial court's reasons for imposing an aggravated exceptional sentence upon Petitioner Sweet were not "clearly erroneous" under the circumstances of this case. The court in its findings of fact and conclusions of law articulated, as a matter of law, sufficient reasons to justify an exceptional sentence above the standard range.
We affirm the decisions of the Court of Appeals, Division II, in the cases of Petitioners Isaac Donald Sweet and Robert James Slaton which affirmed the decisions of the Pierce County Superior Court declining to merge their convictions for first-degree assault and first-degree burglary. We also affirm the conclusions of the Court of Appeals in all other respects in the case of Petitioner Sweet.
*1234 GUY, C.J., and DURHAM, JOHNSON, ALEXANDER, TALMADGE, SANDERS, and IRELAND, JJ., concur.
MADSEN, J., concurs in result only.
NOTES
[1] State v. Sweet, 91 Wash.App. 612, 614, 959 P.2d 677 (1998), review granted, 137 Wash.2d 1007, 978 P.2d 1098 (1999).
[2] Id.
[3] Id. at 614-15, 959 P.2d 677.
[4] Id.
[5] Id. at 615, 959 P.2d 677.
[6] Id. at 616, 959 P.2d 677.
[7] Id. at 615, 959 P.2d 677.
[8] Id.
[9] Id.
[10] Id.
[11] Id.
[12] Id.
[13] Id.
[14] Id.
[15] Id.
[16] Petitioner Sweet's Clerk's Papers at 4-5.
[17] Id. at 5.
[18] Sweet, 91 Wash.App. at 614, 959 P.2d 677.
[19] Id.
[20] Id. at 615, 959 P.2d 677.
[21] Id.
[22] Id.
[23] Petitioner Sweet's Clerk's Papers at 5.
[24] Id.
[25] Sweet, 91 Wash.App. at 615, 959 P.2d 677.
[26] Id.
[27] Id.
[28] Id. at 616, 959 P.2d 677.
[29] Petitioner Sweet's Clerk's Papers at 5; see also Sweet, 91 Wash.App. at 615, 959 P.2d 677.
[30] Petitioner Sweet's Clerk's Papers at 5.
[31] Sweet, 91 Wash.App. at 615, 959 P.2d 677.
[32] Id. at 615-16, 959 P.2d 677.
[33] Petitioner Sweet's Clerk's Papers at 51.
[34] Id.
[35] Id. at 66.
[36] Id. at 67.
[37] Id. at 69.
[38] Id.
[39] Petitioner Sweet's Clerk's Papers at 1-3; Petitioner Slaton's Clerk's Papers at 1-3.
[40] Petitioner Sweet's Clerk's Papers at 121-23; Petitioner Slaton's Clerk's Papers at 41-42.
[41] Petitioner Slaton's Clerk's Papers at 94-95.
[42] Sweet, 91 Wash.App. at 616, 959 P.2d 677. See also Petitioner Sweet's Clerk's Papers at 313.
[43] Sweet, 91 Wash.App. at 616, 959 P.2d 677; State v. Slaton, No. 20778-8-II, 1998 WL 661544 (Wash.Ct.App. Sept. 25, 1998).
[44] Sweet, 91 Wash.App. at 616, 959 P.2d 677.
[45] State v. Sweet, No. 21019-3-ii, slip op. at 9 (Wash.Ct.App. July 17, 1998).
[46] Id. at 17.
[47] Slaton at 2.
[48] State v. Sweet, 91 Wash.App. 612, 614, 959 P.2d 677 (1998); See also State v. Sweet, No. 21019-3-II (Wash.Ct.App. July 17, 1998).
[49] Slaton.
[50] 92 Wash.2d 671, 600 P.2d 1249 (1979), cert. dismissed, 446 U.S. 948, 100 S.Ct. 2179, 64 L.Ed.2d 819 (1980).
[51] Id. at 677, 600 P.2d 1249. (Footnote omitted.)
[52] State v. Ortiz, 77 Wash.App. 790, 895 P.2d 845 (1995).
[53] State v. Hunter, 35 Wash.App. 708, 669 P.2d 489 (1983); State v. Fryer, 36 Wash.App. 312, 673 P.2d 881 (1983); State v. Davison, 56 Wash. App. 554, 784 P.2d 1268 (1990).
[54] Hunter, 35 Wash.App. at 717, 669 P.2d 489; citing State v. Hoyt, 29 Wash.App. 372, 378, 628 P.2d 515 (1981).
[55] 98 Wash.2d 1, 653 P.2d 1024 (1982).
[56] Fryer at 315-16, 673 P.2d 881.
[57] Bonds at 15, 653 P.2d 1024; citing State v. Thompson, 88 Wash.2d 13,17, 558 P.2d 202 (1977).
[58] Strenge v. Clarke, 89 Wash.2d 23, 29, 569 P.2d 60 (1977).
[59] State v. McDougal, 120 Wash.2d 334, 350, 841 P.2d 1232 (1992); citing State v. Fjermestad, 114 Wash.2d 828, 835, 791 P.2d 897 (1990).
[60] State v. Michielli, 132 Wash.2d 229, 237, 937 P.2d 587, reconsideration denied (Jul. 22, 1997).
[61] Erection Co. v. Department of Labor & Indus., 121 Wash.2d 513, 518, 852 P.2d 288 (1993).
[62] Michielli at 238, 937 P.2d 587.
[63] State v. Vladovic, 99 Wash.2d 413, 420-21, 662 P.2d 853 (1983).
[64] Bonds at 15-16, 653 P.2d 1024.
[65] State v. Collicott, 118 Wash.2d 649, 657-58, 827 P.2d 263 (1992).
[66] Petitioner Sweet's Clerk's Papers at 131.
[67] State v. Boast, 87 Wash.2d 447, 456, 553 P.2d 1322 (1976).
[68] State v. Davis, 101 Wash.2d 654, 682 P.2d 883 (1984).
[69] Id.
[70] Sweet, 91 Wash.App., at 615, 959 P.2d 677.
[71] State v. Sweet, Pierce County Superior Court No. 96-1-00378-8, 2 Verbatim Report of Proceedings at 158-59.
[72] Id. at 181.
[73] State v. Easter, 130 Wash.2d 228, 241, 922 P.2d 1285 (1996) (citing Doe v. United States, 487 U.S. 201, 213, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988)).
[74] Id.
[75] Id. at 233, 922 P.2d 1285.
[76] Id. at 234, 922 P.2d 1285.
[77] State v. Lewis, 130 Wash.2d 700, 706-07, 927 P.2d 235 (1996), citing Tortolito v. State, 901 P.2d 387, 390 (Wyo.1995).
[78] Easter, 130 Wash.2d at 242, 922 P.2d 1285.
[79] Petitioner Sweet's Clerk's Papers at 313. Petitioner's sentences for burglary in the first degree and conspiracy to commit burglary in the first degree were within the standard range. See Petitioner Sweet's Clerk's Papers at 307.
[80] Petitioner Sweet's Petition for Review at 18.
[81] Petitioner Sweet's Clerk's Papers at 307-10.
[82] State v. Gaines, 122 Wash.2d 502, 507, 859 P.2d 36 (1993). See RCW 9.94A. 120(2).
[83] State v. Garza, 123 Wash.2d 885, 889, 872 P.2d 1087 (1994).
[84] Petitioner Sweet's Clerk's Paper at 307.
[85] Gaines at 512, 859 P.2d 36 (citing State v. Harding, 62 Wash.App. 245, 813 P.2d 1259 review denied 118 Wash.2d 1003, 822 P.2d 287 (1991)) (exceptional sentence upheld where two of three aggravating factors invalidated).