[No. 42398-7-II.   Division Two.   August 6, 2013.]

THE STATE OF WASHINGTON, *Respondent*, v. GUY JAY RALPH, JR., *Appellant*.

*Lila J. Silverstein* (of *Washington Appellate Project*), for appellant.

*Deborah S. Kelly, Prosecuting Attorney*, and *Lewis M. Schrawyer, Deputy*, for respondent.

¶1 HUNT, J. — Guy Jay Ralph Jr. appeals his jury trial convictions and sentences for second degree robbery, second degree taking a motor vehicle without permission, and witness tampering. He argues that (1) the robbery and the taking a motor vehicle without permission convictions constitute double jeopardy, (2) the State failed to prove both "to convict" instruction alternative means of committing witness tampering and the trial court failed to give a jury instruction on alternative means unanimity, (3) the trial court erroneously included a prior Oregon conviction in his offender score because the State failed to prove it comparable to a Washington offense, and (4) the trial court erred in imposing legal financial obligations (LFOs) without finding that he had the ability to pay.

¶2 In the published portion of this decision, we hold that Ralph's robbery and taking a motor vehicle convictions constitute double jeopardy under the facts of this case. In the unpublished portion of this decision, we further hold that (1) Ralph fails to show manifest constitutional error under RAP 2.5(a)(3) to merit addressing for the first time on appeal his unpreserved challenges to (a) the State's failure to elect one alternative means of committing witness tampering, (b) the sufficiency of evidence to support the alternative means, and (c) the trial court's failure to give the jury an alternative means unanimity instruction; (2) the State failed to establish that Ralph's prior Oregon conviction was legally comparable to a Washington felony; and (3) his LFO issue is not ripe for review.

¶3 We vacate Ralph's conviction for second degree taking a motor vehicle without permission and remand to the trial court to strike this conviction from the record and to

resentence him. At Ralph's resentencing hearing on remand, the State may present additional evidence to show the factual comparability of his prior Oregon conviction. We otherwise affirm.

## FACTS

### I. CRIMES

¶4 In February 2011, Guy Jay Ralph Jr. helped Leroy Hampton move belongings from Emily Beadle's trailer house to a new residence. After unloading his truck, Hampton told Ralph that they needed to return to Beadle's for another load. While Ralph was talking on Hampton's cellular telephone en route, Ralph asked Hampton to drive to another location to look at a bridge on which he (Hampton) had worked. Hampton heard Ralph ask whether the person to whom he was speaking on the phone wanted him (Ralph) "to go through the second job, or something like that"; the other person respond, "Yes"; and Ralph reply that he would "do it." Verbatim Report of Proceedings (VRP) (July 19, 2011) at 35. Ralph then gave the phone back to Hampton and asked him to "pull over." VRP (July 19, 2011) at 36. Feeling uncomfortable, Hampton initially refused to stop.

¶5 Ralph threatened to "beat [Hampton's] face in," and Hampton stopped. Ralph accused Hampton of stealing a "$10 knife" from Beadle's house. VRP (July 19, 2011) at 38. Hampton denied this accusation and, to demonstrate that he did not have the knife, emptied his pockets and took off his jacket for Ralph to search. Ralph "punched [Hampton] in the face," knocked him to the ground, and "came at [him] again"; Hampton "crawled under the door and . . . took off running." VRP (July 19, 2011) at 38.

¶6 Ralph drove away in Hampton's truck, which contained Hampton's jacket, wallet, and cell phone. Hampton ran to the nearest house and called 911. Officers later found

Hampton's truck behind a store two or three miles from where the assault had occurred; Hampton's jacket was still in the truck, but his GPS system, his wallet, some stereo equipment, and his cell phone were missing.

¶7 Hampton identified Ralph in a photomontage. Ralph denied having taken Hampton's truck and asserted that Hampton had dropped him off at the trailer park where Beadle lived. The police arrested Ralph.

¶8 While detained in the Clallam County Corrections Facility awaiting trial, Ralph wrote a letter to his sister, stating:

> Hey sister, . . . could you do me a great big favor before my trial? Please. I need Emily (Welcome Inn number 44) to write a statement that on the morning of the 27th of February Leroy Hampton picked [sic] me and Denise around 1:00 a.m., and dropped us off around 4:00 a.m., and he was fine. Also, I need you to get ahold of Denise, Emily should know how, and have her say the same thing, only that Leroy, her and I drove to the Lower Elwha, he unloaded his truck and we came back. If you guys can't get ahold of her just leave her out of it. But have Emily write one please. And have her and Mike write that I stayed with them the rest of the day. Unless you want to write one for me. And Kim and mom. If not please make sure Emily will please. I need the statements to get to my attorney . . . . I'm putting his card in with this letter. Please make sure this gets done. And write back soon and let me know. Love me always, your little brother.

VRP (July 20, 2011) at 37-38.

## II. Procedure

¶9 The State charged Ralph with second degree robbery (of Hampton's "personal property," otherwise unspecified), second degree taking a motor vehicle (Hampton's truck) without permission, third degree theft (of unspecified "property or services of another"),[1] and tampering with a

---

[1] At trial, the State unsuccessfully tried to prove this count by offering evidence that Ralph stole the items in Hampton's truck bed when Ralph stole the truck.

witness (by attempting to induce a person to testify falsely or to withhold from a law enforcement agency information relevant to a criminal investigation). Clerk's Papers (CP) at 92-93. The case proceeded to a jury trial.

## A. Trial

¶10 At trial, the State's witnesses testified as described above. Ralph, the sole defense witness, testified that (1) Hampton arrived at Beadle's after midnight and he (Ralph) volunteered to help Hampton move, (2) he (Ralph) had not been angry with Hampton, and (3) Hampton had dropped him off near the trailer park and left. Ralph denied having assaulted Hampton and having taken his truck or other property. Ralph admitted having written the letter to his sister asking her to contact witnesses; but he claimed that he had not intended to ask anyone to change his or her testimony and that he had just wanted these people to contact his attorney and say that he (Ralph) had been with them on the day of the assault.

¶11 The trial court gave the jury the following "to convict" witness tampering instruction:

> To convict the Defendant of the crime of TAMPERING WITH A WITNESS as charged in Count IV, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That during the period of time from on or about March 27, 2011, to on or about May 6, 2011, the Defendant *attempted to induce a person to testify falsely* or *withhold from a law enforcement agency information which he or she had relevant to a criminal investigation*; and
>
> (2) That the other person was a witness or a person the Defendant had reason to believe was about to be called as a witness in any official proceedings or a person whom the Defendant had reason to believe might have information relevant to a criminal investigation.

CP at 74 (Instruction 20) (emphasis added).[2] Although Ralph objected to this "to convict" instruction on various grounds, he did not request a unanimity instruction for the alternative means mentioned in part (1) of this instruction. Nor did he object to the instruction's language "withhold from a law enforcement agency information which he or she had relevant to a criminal investigation." Consequently, the trial court did not advise the jury that it must be unanimous about the alternative means used to commit witness tampering.

¶12 In their closing arguments, the State and Ralph *mentioned* both witness tampering means from the "to convict" instruction: attempt to "induce a person to testify falsely" and to "withhold from a law enforcement agency information which he or she had relevant to a criminal investigation." But the substance of their arguments *focused solely* on attempt to "induce a person to testify falsely." VRP (July 20, 2011) at 135.

¶13 The jury found Ralph guilty of second degree robbery of Hampton's truck, second degree taking a motor vehicle (Hampton's truck) without permission, and tampering with a witness. It found him not guilty of third degree theft of Hampton's personal items in his truck.

## B. Sentencing

¶14 At sentencing, the State conceded that Ralph's robbery and motor vehicle taking convictions "merge[d] for purposes of sentencing" because the jury had acquitted him of the theft charge, which had been based on theft of the items in the stolen truck. VRP (Sentencing) at 4. Neither

---

[2] The trial court also instructed the jury:

> A person commits the crime of TAMPERING WITH A WITNESS when he or she attempts to induce a witness or person he or she has reason to believe is about to be called as a witness in any official proceeding, or a person whom he or she has reason to believe may have information relevant to a criminal investigation to testify falsely.

CP at 73 (Instruction 19).

the parties nor the trial court, however, addressed whether the robbery and the motor vehicle taking convictions were the same crime for double jeopardy purposes.

¶15 Also at sentencing, Ralph argued that his prior 2004 Oregon conviction for unauthorized use of a motor vehicle should not be included in his offender score because the Oregon offense's "elements" were not the same as those for the analogous Washington offense and that his Oregon conviction should not be included in his offender score because it was "not counted" for sentencing on a previous otherwise unrelated Washington conviction. VRP (Sentencing) at 9. The State argued that the Oregon offense had the same elements as Washington's taking a motor vehicle offense. Without addressing the factual comparability of the Oregon offense, the trial court included the Oregon conviction in Ralph's offender score.

¶16 Despite Ralph's assertion that he was "indigent," the trial court imposed LFOs, without making written or oral findings about Ralph's present or future ability to pay them. VRP (Sentencing) at 19. And, although the trial court listed each LFO separately, it did not expressly designate which were mandatory or discretionary.

¶17 Ralph appeals his convictions and specific aspects of his sentence, including imposition of LFOs.

## ANALYSIS

### Double Jeopardy

¶18 Ralph first argues that his convictions for second degree robbery and second degree taking of a motor vehicle without permission (TMVWP) violate his constitutional right to be free from double jeopardy. He did not challenge these two convictions on double jeopardy grounds below when the State conceded that these two crimes "merged" for sentencing purposes and the trial court sentenced him for only the robbery. VRP (Sentencing) at 9. But because this

issue constitutes a manifest constitutional error for purposes of RAP 2.5(a)(3)'s preservation exception, we address this issue for the first time on appeal, agree with Ralph that these two convictions constitute double jeopardy under the facts of this case, and remand to the trial court to vacate his TMVWP conviction.

## Multiple Punishments/Convictions for Same Crime

¶19 Our federal and state constitutions prohibit being *punished*[3] twice for the same crime. U.S. CONST. amend. V; WASH. CONST. art. I, § 9; RAP 2.5(a)(3); *State v. Freeman*, 153 Wn.2d 765, 770-71, 108 P.3d 753 (2005). Ralph's two convictions are not the same crime in law because their statutory elements differ. *See Freeman*, 153 Wn.2d at 777, 772. Nevertheless, this conclusion does not resolve the issue before us. Even where, as here, a defendant receives only one sentence for the two crimes, double jeopardy can also encompass being twice *convicted* for the same crime: Absent clear legislative intent to the contrary, two *convictions* constitute double jeopardy when the evidence required to support a conviction for one charge is also sufficient to support a conviction for the other charge, even if the more serious charge has additional elements. *See Freeman*, 153 Wn.2d at 777.

---

[3] We recognize that the legislature may constitutionally authorize multiple punishments for a single course of conduct. *State v. Calle*, 125 Wn.2d 769, 776, 888 P.2d 155 (1995). Here, the second degree robbery (RCW 9A.56.190) and second degree TMVWP (RCW 9A.56.075(1)) statutes do not expressly authorize separate punishments. Moreover, the legislature included them in the same chapter of the criminal code, suggesting that it intended one conviction for a single theft of a motor vehicle, even if chargeable both as a robbery and a TMVWP, depending on the facts surrounding the particular crime. *See State v. Hughes*, 166 Wn.2d 675, 685, 212 P.3d 558 (2009); *In re Pers. Restraint of Percer*, 150 Wn.2d 41, 51, 75 P.3d 488 (2003); *Calle*, 125 Wn.2d at 779.

Here, however, we do not address whether the legislature intended multiple punishments for stealing a truck with force from the owner's presence and simply stealing a motor vehicle without force in the owner's absence because (1) the State conceded at sentencing that Ralph's robbery and TMVWP counts merged for sentencing purposes, and (2) the trial court imposed a single punishment for both convictions.

¶20 To determine whether Ralph's second degree robbery and TMVWP convictions constitute double jeopardy, we turn to the merger doctrine[4] and another related double jeopardy exception, which allows two convictions where one crime is independent from (rather than merely incidental to) the other crime or involves a separate injury. *See Freeman*, 153 Wn.2d at 777, 779. Second degree robbery requires that the defendant (1) unlawfully take; (2) personal property; (3) from the person of another or in his presence; (4) against that person's will by use of or threat of force, violence, or fear of injury.[5] RCW 9A.56.190.[6] Robbery also includes the nonstatutory element of specific intent to

---

[4] As Division One of our court has explained:

The merger doctrine precludes conviction for one or more offenses based on acts which are so much a part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may not be attributed to them. If such acts have no independent purpose or effect, they become merged into the completed substantive crime. *State v. Johnson*, 92 Wn.2d 671, 600 P.2d 1249 (1979)[, *overruled in part on other grounds by State v. Sweet*, 138 Wn.2d 466, 980 P.2d 1223 (1999)]; *State v. Hoyt*, 29 Wn. App. 372, 628 P.2d 515 (1981); *State v. Ingham*, 26 Wn. App. 45, 612 P.2d 801 (1980).

*State v. Penn*, 32 Wn. App. 911, 914-15, 650 P.2d 1111, *review denied*, 98 Wn.2d 1012 (1982) (TMVWP and robbery were two distinct and separable acts; TMVWP was incidental to robbing victim of wallet and had independent purpose of enabling Penn to flee the crime scene; distinguished from cases where one charged crime could not practically have been committed without commission of the other charged crimes).

[5] A person commits second degree robbery if "he or she commits robbery." RCW 9A.56.210. The legislature amended RCW 9A.56.210 in 2011. LAWS OF 2011, ch. 336, § 380 (effective July 22, 2011). The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute. RCW 9A.56.190 defines "robbery" as follows:

A person commits robbery when he or she unlawfully takes personal property from the person of another or *in his or her presence against his or her will by the use or threatened use of immediate force*, violence, or fear of injury to that person or his or her property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial.

(Emphasis added.)

[6] The legislature amended RCW 9A.56.190 in 2011. LAWS OF 2011, ch. 336, § 379 (effective July 22, 2011). The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

steal, which our Supreme Court has held is the equivalent to specific intent to deprive the victim of his or her property permanently. *State v. Sublett*, 176 Wn.2d 58, 88, 292 P.3d 715 (2012) (citing *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 255, 111 P.3d 837 (2005)).

¶21 Second degree taking of a motor vehicle without permission (TMVWP) also requires that the defendant take another person's property; but it further requires taking a specific type of property, namely a motor vehicle, unlike second degree robbery, which does not specify the type of property taken.[7] Also, unlike second degree robbery, second degree TMVWP does *not* require (1) that the taking occur from the victim or in his presence; (2) that the taking be against the victim's will by use or threat of force, violence, or fear of injury; or (3) that the taking be done with intent to deprive the victim of his or her property permanently. RCW 9A.56.075(1).

¶22 Although the statutory elements of the two crimes differ, as charged and proved here, second degree TMVWP is the functional equivalent of a lesser included offense of the second degree robbery. As applied here, both crimes required "taking" another person's property, Hampton's truck,[8] without his permission; proving these two main facts proved second degree TMVWP. The following

---

[7] RCW 9A.56.075(1) defines second degree taking of a motor vehicle without permission:

> A person is guilty of taking a motor vehicle without permission in the second degree if he or she, without the permission of the owner or person entitled to possession, intentionally takes or drives away any automobile or motor vehicle, whether propelled by steam, electricity, or internal combustion engine, that is the property of another, or he or she voluntarily rides in or upon the automobile or motor vehicle with knowledge of the fact that the automobile or motor vehicle was unlawfully taken.

[8] Although TMVWP specifically requires taking a motor vehicle and robbery requires taking personal property generally, a person's motor vehicle is also personal property. Thus, theft of a motor vehicle can be used, as here, to satisfy the theft of personal property element of a robbery conviction. *See, e.g., State v Crittenden*, 146 Wn. App. 361, 367, 189 P.3d 849 (2008) ("Both theft and second degree [taking of a motor vehicle] require an unauthorized taking of property."), *review denied*, 165 Wn.2d 1042 (2009).

additional facts, however, elevated Ralph's TMVWP from nonforceful "joyriding" to second degree robbery: Ralph punched Hampton in the face and knocked him to the ground to gain possession of Hampton's truck and drive it away.[9] Under the facts charged and proved here, the evidence supporting Ralph's robbery conviction was also sufficient to support his TMVWP conviction. Thus, the second degree robbery and the second degree TMVWP, as charged and proved here, are the same in fact: The robbery was based on the single act of Ralph's taking a motor vehicle from a single victim by force; and proof of the theft element of the robbery also proved the TMVWP charge.

¶23 As our Supreme Court has long acknowledged, the constitutional prohibition against double jeopardy is violated when " 'the evidence required to support a conviction [of one crime] would have been sufficient to warrant a conviction upon the other.' " *Freeman*, 153 Wn.2d at 772 (citing *State v. Reiff*, 14 Wash. 664, 667, 45 P. 318 (1896) (quoting *Morey v. Commonwealth*, 108 Mass. 433, 434 (1871))).[10] Accordingly, we hold that, under the facts here, Ralph's convictions for second degree robbery and second degree taking of a motor vehicle without permission consti-

---

[9] Because we assume the jury followed the trial court's instructions, we can infer from the jury's second degree robbery guilty verdict that the jury found all the elements in the second degree robbery "to convict" instruction, including that Ralph intended to deprive Hampton of his truck permanently. *See State v. Kirkman*, 159 Wn.2d 918, 937, 155 P.3d 125 (2007).

[10] *See also Hughes*, 166 Wn.2d at 682-84 (convictions for both rape of child and second degree rape constituted double jeopardy where: (1) both offenses arose out of one act of sexual intercourse with the child victim; and (2) although the statutory elements of the two crimes differ, both require proof of nonconsent (the victim's child status and resultant inability to consent)). The statutes were both meant to protect individuals who are unable to consent by reason of their status, whether the status is due to young age, mental incapacity, or physical helplessness. *Hughes*, 166 Wn.2d at 684.

Similarly here, both convictions for second degree robbery and second degree TMVWP were based on Ralph's single act of stealing Hampton's truck, the only stolen item that the State proved beyond a reasonable doubt, as evinced by the jury's verdicts of guilty of taking Hampton's truck without permission and of second degree robbery, and not guilty of third degree theft of the less valuable personal property, the items in the back of Hampton's truck.

tute double jeopardy. We vacate Ralph's conviction for second degree taking of a motor vehicle without permission and remand for the trial court to strike that conviction from Ralph's judgment and sentence. *State v. Turner*, 169 Wn.2d 448, 455, 466, 238 P.3d 461 (2010) (on remand for a double jeopardy violation, we must reverse and remand with instructions to vacate the lesser punished crime).

¶24 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, J., concurs.

¶25 JOHANSON, A.C.J. (concurring) — I concur with the majority opinion but write separately regarding Guy Jay Ralph Jr.'s legal financial obligation (LFO) challenge because I would follow our analysis in *State v. Blazina*, 174 Wn. App. 906, 301 P.3d 492 (2013). I would decline to reach the merits of the LFO issue because Ralph did not object when the trial court failed to find that Ralph had a present or future ability to pay LFOs and when the trial court imposed the LFOs. Accordingly, I would hold that Ralph did not properly preserve the issue for appellate review. RAP 2.5(a).

Reconsideration denied September 30, 2013.

Review denied 179 Wn.2d 1017 (2014).