[No. 32662-1-II.   Division Two.   May 23, 2006.]

THE STATE OF WASHINGTON, *Petitioner*, v. DONALD GENE SLONE, *Respondent*.

*Gerald A. Horne, Prosecuting Attorney*, and *P. Grace Kingman, Deputy*, for petitioner.

*Ryan B. Robertson*, for respondent.

¶1 HUNT, J. — The State appeals the superior court's grant of a new trial to Donald Gene Slone, whose motion for a mistrial the district court denied following the jury's conviction for driving while under the influence of intoxicants (DUI). The State argues that there was no prejudice to Slone warranting a mistrial when a testifying officer inadvertently violated the trial court's pretrial order to exclude testimony about field sobriety tests and mentioned having read Slone his *Miranda*[1] rights. We agree and reverse.

## FACTS

### I. DUI ARREST

¶2 Driving along State Route 16 in Pierce County, Donald Gene Slone's vehicle passed Washington State Patrol Trooper Woodrow Perkins' patrol vehicle. Trooper Perkins followed Slone, determined he was driving 75 miles per hour (mph) in a 40 mph zone, and pulled Slone over.

¶3 When Slone rolled down his window, Trooper Perkins smelled alcohol and noticed that Slone's face was red with bloodshot eyes and that his speech was slurred. When Slone stepped out of his car, Trooper Perkins noticed that Slone was unsteady on his feet and that he even stepped out into a lane of traffic from which Perkins pulled him back. When Trooper Perkins asked Slone to perform field sobriety tests,

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Slone refused. Base on these observations, Perkins arrested Slone for DUI.

¶4 Trooper Sherman Fox then arrived, advised Slone of his constitutional rights and his right to refuse a breath test, and took Slone into custody for a breath test. Slone took the breath test, resulting in alcohol levels of 0.091 and 0.095.[2]

## II. PROCEDURE

¶5 The State charged Slone with DUI in Pierce County District Court.

### A. Trial

#### 1. Field sobriety tests

¶6 The trial court granted Slone's pretrial motion in limine to suppress information about his refusal to take roadside sobriety tests that Perkins asked him to perform. The case went to trial before a jury.

¶7 Trooper Perkins testified on direct:

Q:     Okay. Without telling me your opinion at this time did you form an opinion as to Mr. Slone's sobriety?

A:     Not at that time, no.

Q.     Okay.

[A:]    As he was walking to the rear, I noticed that he was having difficulty with his balance. At that point I talked to him and asked if he would consent to do some physical tests, and at that point he—he stated I would. . . .

Report of Proceedings (RP) at 76. Slone objected and moved for mistrial.

¶8 Slone argued that Perkins' testimony (1) violated the court's pretrial order excluding evidence about Slone's

---

[2] Slone does not challenge these breath test results.

refusal to take roadside sobriety tests[3] and (2) could lead the jury to infer that he had declined to perform the tests. The State acknowledged the impropriety of the officer's inadvertent remark and recommended that the trial court give a curative instruction to the jury; Slone rejected the idea. The trial court ruled that although Perkins' testimony had technically violated its pretrial order in limine, the violation was not prejudicial because Perkins did not mention that Slone had refused to take the field sobriety tests. Ruling that the error was, therefore, harmless, the trial court denied Slone's motion for mistrial.

### 2. *Miranda* rights

¶9  Slone also moved to exclude testimony that a trooper had advised him of his constitutional *Miranda* rights. He argued that if the State presented testimony that the trooper had read Slone his rights, the jury would infer that Slone had remained silent and was, therefore, guilty. The trial court denied his request, stating, "[T]he usual procedure is that people are advised of their rights. . . . [J]uries probably expect to hear that." RP at 81.

¶10  Thereafter, Trooper Fox testified:

Q:     I'm handing you what's been marked a[s] plaintiff's exhibit one. Do you recognize that?

A:     Yes I do.

Q:     And what is it? Can you tell the jury?

A:     This is the—this is page one of the DUI arrest report that I used on—on the night that Mr. Slone was arrested.

Q:     And just look at the top portion of that (inaudible)?

A:     The top portion is the—are the constitutional rights.

Q:     Okay, and can you read the constitutional rights to the jury as you read them at that evening to the defendant?

---

[3] Both parties indicated that this testimony was not likely an intentional violation of the trial court's order.

A:      Okay. At this point I advised Mr. Slone that he was—again, that he was under arrest for DUI and I'm going to go ahead and read him his constitutional rights, and he can read along as I read those to him. "You have a right to remain silent . . . . If you cannot afford an attorney one will be appointed for you without cost before any questioning if you so desire. Do you understand these rights?"

Q:      And did Mr. Slone sign the form acknowledging that he did understand the rights?

A:      Yes he did.

RP at 123-24.

### 3. Breath test implied consent warning

¶11 The State then asked Trooper Fox about the implied consent warning for the breath test, which he had read to Slone after his DUI arrest. Fox told the jury exactly what implied consent language he had read to Slone and that Slone had signed the consent form acknowledging this right. Slone did not object.

### 4. Verdict, motion for new trial, and sentencing

¶12 The jury found Slone guilty of DUI. At sentencing, Slone moved to arrest judgment and for an order dismissing the case or granting a new trial. The trial court again ruled that (1) although the State had violated the pretrial order to refrain from mentioning the field sobriety tests, this error did not prejudice Slone and had no bearing on the jury's decision and (2) the State had not impermissibly commented on Slone's right to remain silent. The trial court denied Slone's motions.

### B. Appeals

¶13 Slone filed an appeal under the Rules for Appeal of Decisions of Courts of Limited Jurisdiction in Pierce County Superior Court. The superior court ruled that (1)

evidence of the officer's reading Slone his *Miranda* rights was an impermissible comment on Slone's constitutional right to remain silent; (2) the minimal testimony touching on the field sobriety test caused "not much" harm to Slone; and (3) this error, combined with the State's comment on Slone's constitutional right to remain silent, entitled Slone to a new trial.

¶14 We granted the State's motion for discretionary review.

## ANALYSIS

### I. STANDARD OF REVIEW

¶15 A trial court has broad discretion to deny or to grant motions for mistrial, which we review for abuse of discretion. The trial court should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly. *State v. Lewis*, 130 Wn.2d 700, 707, 927 P.2d 235 (1996).

¶16 The trial court judge is best suited to judge whether prejudice occurred. *Lewis*, 130 Wn.2d at 707. We note that in denying Slone's motions for mistrial and new trial, the trial court (district court) found no prejudice.[4]

### II. RIGHT TO REMAIN SILENT

¶17 The State argues that Trooper Fox did not impermissibly comment on Slone's right to remain silent because testimony that an officer read a defendant his *Miranda* rights, by itself, does not amount to such an impermissible comment. We agree.

¶18 Under the fifth amendment to the United States Constitution, no person shall be compelled to witness against himself in a criminal case. We similarly interpret

---

[4] The superior court, which granted Slone a new trial, was reviewing the district court trial in its appellate capacity.

our Washington state constitutional provision against self-incrimination, article I, section 9. *State v. Easter*, 130 Wn.2d 228, 235, 922 P.2d 1285 (1996). In either prearrest or postarrest situations, every person has the right to remain silent, which silence cannot be used as substantive evidence of guilt. *Easter*, 130 Wn.2d at 238; *State v. Evans*, 129 Wn. App. 211, 225, 118 P.3d 419 (2005). Accordingly, the State cannot elicit comments from a witness that are related to a defendant's silence or make such comments during closing arguments in order to imply guilt. *Lewis*, 130 Wn.2d at 707; *Easter*, 130 Wn.2d at 236.

■■ ¶19 A mere reference to silence, however, is not necessarily an impermissible comment and, therefore, not reversible constitutional error, absent a showing of prejudice.[5] *State v. Sweet*, 138 Wn.2d 466, 481, 980 P.2d 1223 (1999). Our Supreme Court has addressed a similar situation where, after a jury convicted the defendant of rape, he moved for mistrial based on a detective's trial testimony, which the defendant claimed was a comment on his right to remain silent:

"Q And did you have any further conversation with him?

"A *I told him—my only other conversation was that if he was innocent he should just come in and talk to me about it.*

"Q Was there any other part in the investigation that you had anything else—that you have done?

"A I prepared a bulletin to be distributed to the patrol officers with Mr. Lewis's picture on the bulletin stating there was probable cause to arrest him for that crime, distributed to all patrol precincts, and I drove to his house at one point but nobody was home. And later, once I was notified when he was arrested by patrol, and then just prepared the filing of the case."

---

[5] Even when there is no unconstitutional comment on the right to remain silent, the defendant may still argue that the testimony was prejudicial. *See State v. Sweet*, 138 Wn.2d 466, 481, 980 P.2d 1223 (1999). If there was an impermissible comment on silence, it is reversible error, and the State has the burden of showing that this constitutional error was harmless beyond a reasonable doubt. *Easter*, 130 Wn.2d at 242. Such is not the case here, however, because there was no comment on Slone's right to remain silent.

*Lewis,* 130 Wn.2d at 703 (emphasis added) (quoting RP at 162-64). This testimony in *Lewis* was arguably a more blatant comment on the defendant's right to remain silent than the testimony at issue here.

¶20 Nonetheless, the court rejected Lewis's argument that the detective's answer constituted an impermissible comment on the right to remain silent, reasoning:

> There was no statement made during any other testimony or during argument by the prosecutor that Lewis refused to talk with the police, nor is there any statement that silence should imply guilt. Most jurors know that an accused has a right to remain silent and, absent any statement to the contrary by the prosecutor, would probably derive no implication of guilt from a defendant's silence. *A comment on an accused's silence occurs when used to the State's advantage either as substantive evidence of guilt or to suggest to the jury that the silence was an admission of guilt.* That did not occur in this case.

*Lewis,* 130 Wn.2d at 706-07 (emphasis added) (citations omitted).

¶21 Similarly here, Trooper Fox did not mention how Slone had responded to the reading of his *Miranda* rights, the State elicited no testimony about Slone's refusal to provide a statement, and the State did not allude to these facts in its closing argument. As in *Lewis,* the State neither commented on Slone's silence nor used his silence to suggest to the jury that silence was an admission of guilt.[6] *See State v. Curtis,* 110 Wn. App. 6, 12-13, 37 P.3d 1274 (2002)

---

[6] Slone cites three Division Three cases to support his argument that the State commits reversible error when it presents evidence that an officer read the defendant his *Miranda* rights. But these cases all involve officers who testified about how these defendants reacted or what the defendants said after the officers read them their *Miranda* rights. *See State v. Romero,* 113 Wn. App. 779, 785, 54 P.3d 1255 (2002) (testimony that defendant would not talk to the officer but did not waive rights); *State v. Curtis,* 110 Wn. App. 6, 9, 37 P.3d 1274 (2002) (testimony that defendant refused to speak to the officer and wanted an attorney present); *State v. Nemitz,* 105 Wn. App. 205, 213, 19 P.3d 480 (2001) (testimony that the defendant gave the officer a defense attorney's business card which explains a person's rights if stopped by an officer).

In these Division Three cases, it was the officers' testimonies about the defendants' behaviors or responses following their *Miranda* warnings that the court considered unconstitutional, not merely the fact that the officers read the defendants

(post-*Miranda* comments). We agree with the trial court that jurors are generally aware that police systematically read arrestees their *Miranda* rights. Here, as in *Lewis*, there was no constitutional violation and no mistrial was warranted.

¶22 We hold, therefore, that Trooper Fox's testimony was not a comment on Slone's right to remain silent, there was no violation of Slone's constitutional right, and a mistrial was not warranted.

### III. PRETRIAL ORDER VIOLATION

■ ¶23 The State next argues that the superior court erred in granting a new trial because the district court, which was the trial court, properly exercised its discretion in denying a mistrial after finding that there was no prejudice or bearing on the jury's verdict caused by Trooper Perkins' violation of its order in limine to refrain from mentioning the field sobriety tests.

¶24 Slone responds that (1) the superior court correctly ruled that the State's pretrial order violation, coupled with an impermissible comment on the right to remain silent, constituted cumulative error that merited a new trial and (2) the State's violation of the trial court's pretrial order regarding Trooper Perkins' sobriety tests alone merited a new trial.[7]

¶25 We agree with the district court. Although Trooper Perkins testified that he asked Slone to perform some physical tests, Perkins never mentioned Slone's response— whether Slone refused, ignored, or performed field sobriety tests. Nor does Slone identify any other testimonial evi-

their *Miranda* rights, as was the case here. Therefore, we find these three cases inapplicable.

[7] Citing the State's argument on its motion for discretionary review to our court commissioner, Slone also argues that we should decline to address this issue because the State raised it for the first time on appeal based on RAP 2.5. We disagree. The State sought discretionary review of the superior court's order in its entirety; the State raised the same issues and arguments to the superior court, whose order it appeals, as it does in its brief on appeal.

130

dence from which the jury could have meaningfully inferred that he performed poorly on physical tests. We find no abuse of discretion in the trial court's ruling that this violation of its order in limine was a nonprejudicial, harmless error. We hold, therefore, the superior court erred in ordering a new trial based on cumulative error.

¶26 Accordingly, we reverse the superior court order granting a mistrial, affirm the district court order denying Slone's motions for mistrial and new trial, and affirm Slone's DUI conviction.

QUINN-BRINTNALL, C.J., and VAN DEREN, J., concur.

Review denied at 159 Wn.2d 1010 (2007).